In re the Marriage of:

Judith C. Dutchin, Petitioner-Respondent-Cross-Appellant,

v.

Winston L. Dutchin, Respondent-Appellant-Cross-Respondent.

Court of Appeals

*No. 03–1140. Submitted on briefs March 2, 2004.—Decided April 20, 2004.*

2004 WI App 94

(Also reported in 681 N.W.2d 295.)

 

On behalf of the respondent-appellant-cross-respondent, the cause was submitted on the briefs of *Amy L. Shapiro* of *Perry, Shapiro, Quindel, Saks, Charlton, Sumara & Lerner, S.C.*, Milwaukee.

On behalf of the petitioner-respondent-cross-appellant, the cause was submitted on the briefs of *Helen M. Ludwig* of *Poulos, Sengstock & Budny, S.C.*, West Allis.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. WEDEMEYER, P.J. Winston L. Dutchin appeals from a judgment of divorce. He also appeals from an order denying his motion for reconsideration. Winston argues that the trial court erred when it failed to include Judith C. Dutchin's survivorship pension benefit as an asset for the purposes of equal property division. Judith cross-appeals from the same judgment challenging the trial court's determination that Winston's pension retirement benefits would be treated as income rather than property. Because the trial court did not erroneously exercise its discretion in addressing the survivorship pension benefit, we affirm the appeal on this issue. Because the trial court did not erroneously exercise its discretion in treating the pension retirement benefits as income instead of an asset subject to property division, we also affirm on the cross-appeal.

## BACKGROUND

¶ 2. On May 1, 1971, Judith and Winston married. Following a trial on November 4, 2002, they were granted a judgment of divorce. At the trial, the primary

497

disputed issue was how to divide Winston's pension, which was the most substantial asset of the marriage, valued at approximately $412,000.

¶ 3. At the time of the divorce, Winston's monthly earnings amounted to $3451, which consisted of a monthly pension payment and a monthly social security disability payment. Winston, age sixty, was unable to work due to physical and mental disabilities. Judith, age fifty-four, was still employed as a teacher, earning $2833.34 monthly.

¶ 4. At the divorce trial, Winston insisted that because the pension was in "pay status," the trial court should treat it as an income stream rather than as property to be divided. Judith's position was that the pension should be treated as property to be divided equally between the parties. However, she was not firm in that position and was willing to accept whatever decision the trial court found reasonable.

¶ 5. The trial court found that if the pension was treated as an asset and divided equally, Judith would have a higher monthly income than Winston, which would result in a maintenance award being paid from Judith to Winston. In essence, such a determination would result in a circular and complicated flow of money. Therefore, the trial court found that the most logical and practical approach would be to treat the pension benefit as a stream of income rather than as an asset. In order to equalize incomes, Winston would pay Judith monthly maintenance of $425 until she turned sixty-five.

¶ 6. The next question during the trial involved how to handle the survivorship benefit of Winston's pension, which had an approximate value of $52,000. When Winston elected to start receiving pension benefits, he decided to accept lower monthly payments

initially so that Judith would be entitled to a survivor pension benefit. If Winston died before Judith, she would receive 75% of his monthly pension benefit. If Judith predeceased Winston, she would receive nothing. Initially, Winston conceded that because the survivor pension benefit was contingent upon the pension itself, the survivor benefit could not be treated as an asset because the pension itself was not treated as an asset. His attorney stated:

> It seems to me that, since it's a product, a derivative product of the pension, primary pension of Mr. Dutchin, as much as I hate to admit it, I think that it is not therefore an asset to be divided between the parties. It is factored out by the fact that it is a compliment [sic] of the income, and from the pension, and factored in as the — as part of the maintenance.

Judith agreed. Her attorney responded:

> Judge, if you decide to agree with Mr. Dutchin and not [divide equally the pension] and essentially not count the pension in the property division, I don't believe it would be equitable to count the survivorship as part of the property division either because, again, it's a stream of the income, and you're treating the pension as a stream of income, then survivorship ought to be treated the same way.

Winston's counsel then waffled on his original position:

> Just one second, Your Honor. I am cognizant that certainly the survivorship is a separate interest and has a separate value. Based on all of the uncertainties that actuarials pick the numbers for and plug in their present-day valuations, I guess I would be remiss if I didn't at least suggest to the Court that . . . all pensions and all partial pensions are assets.
>
> It makes sense — I am thinking outloud, I guess.

499

Does it make sense to take Mr. Dutchin's, if you follow our suggestion and treat it as income as opposed to an asset in the estate, does it make sense to then treat Mrs. Dutchin's survivorship differently? And I guess certainly you could argue that, yes, because it's not going to factor into maintenance until the uncertainty of Mr. Dutchin's death, so until that occurs she's got an asset with a present-day value.

¶ 7. With respect to the treatment of the survivorship benefit, the trial court reasoned:

Now, as to the decision, my own question, thorny question, that is what do I do with Mrs. Dutchin's residual from the pension if I have not treated the pension as an asset for Mr. Dutchin. You know, this is one of those things that the parties could agree on, and if Mr. Dutchin felt so strongly about the injustice of him not getting credit for that survivorship benefit, he could work something else out. Because it is Mr. Dutchin's position about the treatment of the pension that raises the issue, and because it's avoidable, and because Mrs. Dutchin's interests, contingent it may or may not ever be realized by her, and because I am not treating the pension in any way, which is valued at $412,000 on Mr. Dutchin's asset column, I deem it to be a fair unequal division of estate, if you will, to allow Miss [sic] Dutchin to keep that residual interest without further compensation, if you will.

And, in fact, I want to make two findings. I think one is that it's actually, since the pension isn't property, this residual benefit is likewise not property.

. . . .

Is likewise not property for purposes of property division. Even if it were property for purposes of property division, in that event I think an unequal

500

division, by awarding that to Miss Dutchin, is fair under the circumstances for the reasons that I've stated.

¶ 8. A judgment of divorce was entered. Subsequently, Winston filed a motion for reconsideration on the trial court's finding with respect to the survivorship benefit. He argued that the survivorship benefit should have been treated as an asset, subject to equal property division. The trial court denied the motion. Winston now appeals, and Judith cross-appeals.

### DISCUSSION

*A. Appeal.*

¶ 9. Winston claims the trial court should have considered the survivorship pension benefit as an asset and should have divided the benefit equally. This court rejects Winston's claims.

¶ 10. The trial court's decision on division of property in a divorce case is a discretionary determination. *Preiss v. Preiss*, 2000 WI App 185, ¶ 10, 238 Wis. 2d 368, 617 N.W.2d 514. We will uphold that exercise of discretion as long as the trial court considered the pertinent facts, applied the correct law, and used a rational process to reach a reasonable determination. *See Johnson v. Johnson*, 157 Wis. 2d 490, 497, 460 N.W.2d 166 (Ct. App. 1990).

¶ 11. Winston's first complaint is that the trial court erred by refusing to treat the survivorship pension benefit as an asset. The record belies his contention. Although the trial court's comments during trial were not entirely clear on this point, its reconsideration hearing comments clarified that it had treated the survivorship pension benefit as an asset:

Clearly, [*the survivorship pension benefit*] *is an asset. And make no mistake about it, my* — the wording that I used when I made the decision, I actually used the word that it's not property, which implies that I didn't think it was an asset, and I hereby reject any such implication. This is an asset that has value. The context that I raised it in at the time of the decision was, is it property for purposes of the property division or is it not property for purposes of property division, and that's really the bottom line question.

¶ 12. Thus, the trial court clearly rejected Winston's argument that it failed to adhere to case law requiring pension benefits to be addressed during property division divorce hearings. *See Steinke v. Steinke,* 126 Wis. 2d 372, 379–80, 376 N.W.2d 839 (1985), *modified,* 127 Wis. 2d 444, 379 N.W.2d 853 (1986) (generally, pension plans have been treated as an asset subject to property division); *Herdt v. Herdt,* 152 Wis. 2d 17, 21–22, 447 N.W.2d 66 (Ct. App. 1989) (although pension plans must be considered as part of the marital estate, the trial court has the discretion to make an unequal property division for good reason).

¶ 13. At the reconsideration hearing, the trial court clearly considered the survivorship pension benefit to be an asset, but determined that it would be unfair to divide this asset equally. The trial court found the unequal distribution to be appropriate based primarily on two statutory factors, WIS. STAT. § 767.255(3)(j) and (m) (2001–02):[1]

> I think all of the circumstances in this case warrant a deviation from a mathematical 50/50 division of the estate.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

> By not debiting [Judith] cash money for this con-
> tingent interest, you ask me to cite you the factors. The
> factors are (j), this is of 767.255(2), other economic
> circumstances of each party including the pension
> benefits, which talk about this.
>
> I also make reference to the cases. I can't cite you
> the name of them, but the courts, both trial and
> appellate, have struggled mightily with these pensions,
> and there is plenty of case law that says one of the
> hardest jobs for a trial court is to figure out how fairly
> to handle these pension benefits.
>
> And given all the circumstances, I think that the
> ruling, the order that I made, is fair given the complex-
> ity of the pension and the circumstances of the parties.

¶ 14. Under the circumstances of this case, one
cannot look at the survivorship pension benefit in
isolation. Rather, this issue was, in large part, depen-
dent upon the treatment of the pension itself. Winston
was insistent that the $412,000 pension not be treated
as an asset for the purpose of property division, but
rather, be considered as an income stream for setting
maintenance. Judith was mildly opposed to Winston's
preference, but willing to accept whatever the trial
court found to be reasonable.

¶ 15. The trial court specifically addressed this
issue before making its determination. It addressed all
of the factors in Wis. Stat. § 767.255(3) and discussed
options available for resolution of this matter. It was
left with a couple of choices. The first option was to
return the $52,000 survivorship pension benefit to the
pension value itself and divide the pension equally as an
asset. In this way, Winston would receive a monthly
pension benefit based on his half of the pension and
Judith would receive a monthly pension benefit based

on her half of the pension. Electing this option, however, would be complicated and result in Judith earning a substantially greater monthly income than Winston, which, in turn, would require a maintenance order for Judith to pay Winston. The trial court concluded that going this route would result in a "circular flow of funds" and pointed out that appellate courts have granted trial courts discretion to avoid such a result. *See, e.g., Herdt,* 152 Wis. 2d at 22.

¶ 16. The second option was to treat the $412,000 pension as an income stream, as requested by Winston, and not significantly opposed by Judith. Electing this option would prevent any unnecessary circular flow of money and essentially satisfy the requests and needs of both parties. In choosing this option, however, the trial court found that the survivorship pension benefit should not be divided 50/50 because it was a derivative benefit from the pension itself. In other words, Winston could not have it both ways—if the pension was not going to be divided 50/50, then the survivorship benefit should not be divided 50/50 either. The trial court reasoned that granting Winston's request to treat the pension as income would result in some uncertainty for Judith. First, the survivorship benefit might never inure to Judith, should she predecease Winston. Second, the current maintenance schedule might change in the future, resulting in a reduction of maintenance to Judith. In addition, the trial court found that some costs associated with the survivorship benefit had already been incurred during the marriage. Thus, treating the $412,000 pension as an income stream instead of dividing it as an asset was more favorable to Winston than to Judith.

¶ 17. As a result, the trial court found that the most equitable result would be not to divide Judith's survivorship benefit 50/50. We cannot conclude, based on these circumstances, that the trial court's decision constituted an erroneous exercise of discretion. Trial courts are presented with an infinite range of factual situations in addressing the complicated decision of dividing property and determining maintenance. *Cook v. Cook*, 208 Wis. 2d 166, 180, 560 N.W.2d 246 (1997). This is particularly true when the case involves pension plans and retirement benefits. As a result, Wisconsin provides our divorce courts with broad discretion in attempting to fashion the most equitable and fair result. " '[T]he ultimate test of a . . . [divorce] decree is not how well any one issue has been resolved, but instead whether all the economic components work together to provide adequately for the needs of all members of the now-fragmented family.' " *Id.* at 183 (citation and footnote omitted). The trial court here entered a decree based not only on the required statutory factors and case law, but also on the requests of the parties to reach a fair and equitable result. Thus, the trial court's decision on this issue is affirmed.

*B. Cross-appeal.*

¶ 18. In her cross-appeal, Judith contends that the trial court erroneously exercised its discretion when it treated the $412,000 pension as an income stream for maintenance purposes, instead of treating it as an asset subject to 50/50 property division.

¶ 19. The standard of review on this issue is the same as stated above. We will not overturn the trial court's determination unless it erroneously exercised its

discretion. Judith argues the trial court relied on an erroneous view of the law when it found that the pension could be treated as income for maintenance purposes instead of an asset for property division. We conclude that the trial court did not erroneously exercise its discretion.

¶ 20. Although the case law in this state clearly states the general rule that retirement plans earned during the marriage through one spouse's employment must be considered in the property division at the time of divorce, *see Steinke*, 126 Wis. 2d at 379–80, the rule is not inflexible, *see Herdt*, 152 Wis. 2d at 21–22. Rather, trial courts are afforded the discretion necessary to render equitable and fair results. Here, the trial court clearly considered the pension in determining the property division. It addressed whether "in effect [the court should] go retroactive to Mr. Dutchin's retirement and do a qualified domestic relations order" to divide the pension equally between the parties. The trial court found, however, by doing that, the situation would become much more complicated and result in an unnecessary circular flow of money. The trial court found that the fairest result would be to treat the pension as income and enter a maintenance order for Winston to pay Judith $425 per month until she turns sixty-five.

¶ 21. The trial court clearly set forth its rationale at the divorce trial:

> So then we get down to the question of the pension plan and what to do with it. At the heart of the argument is the Steinke case . . . . And the Steinke case stands for the proposition that a pension must be considered in the property division in a divorce. I've read the case, I think I understand it.

[Winston's counsel] contends, based upon the Cook Decision, 1997, that the bright line rule of the Steinke case, which seems to say that no matter what the status of a pension is, you have to treat it as property. The Cook Case . . . softens that to some extent. One thing is clear about the Steinke Case, and it's certainly true in this case, and that is that pensions have to be taken into consideration and thought about very long and hard before deciding what should happen in a divorce case.

Now, I do observe, and I think it's a fact that in this case, because the pension is divisible by the qualified domestic relations order, we could in effect go retroactive to Mr. Dutchin's retirement and do a qualified domestic relations order even today.

. . . .

In many cases where a person is in pay status in a pension, it is no longer possible to enter a qualified domestic relations order, and in that case, what [Judith's counsel] proposes, is impossible. And I conclude from that . . . that the logic of your argument fails because you seem to be arguing, based upon Steinke, that I have to do it this way because it's a pension and it must be treated as property. Those pensions, for instance, any City pension, City of Milwaukee pension, not divisible by qualified domestic relations order, I couldn't do it, we would have to treat it some other way. And the fairest way in that case would be to treat it as income. So I reject the conclusion that as a matter of law I must treat it as property.

Then the question is . . . what's the fairest way to do this.

¶ 22. The trial court then addressed both scenarios—either dividing the pension as an asset 50/50 or treating it as an income stream. It found that the

former would result in a complicated and unnecessary circular flow of money, and that the latter would make more sense by keeping the divorce decree simple. The trial court's decision reflects its conscientious and deliberate process of ascertaining the most equitable resolution under the facts presented in this case. Based on the foregoing, we cannot conclude that the trial court erroneously exercised its discretion in this case.

*By the Court.*—Judgment and order affirmed.